UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
ANTHONY MEDINA,                                            :
                                                           :
                                  Plaintiff,               :
                                                           :                    20-CV-3763 (VSB)
                   - against -                             :
                                                           :                    **OPINION & ORDER**
                                                           :
CITY OF NEW YORK ET AL.                                    :
                                                           :
                                  Defendants.              :
                                                           :
-----------------------------------------------------------X

Appearances:

Anthony Medina
Bronx, NY
*Pro se Plaintiff*

James Brennan Cooney
NYS Office of The Attorney General
New York, NY

Andrew James Rauchberg
Lana Koroleva
New York City Law Department
New York, NY

*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Before me are two unopposed motions to dismiss filed by the City Defendants[1] and the

_____

[1] The term "City Defendants" refers to the City of New York (the "City") and certain employees of the New York City Department of Corrections ("NYC DOC") including:  former Disability Rights Coordinator Shain Anderson ("Anderson"), Health Service Manager Michelle Bacon ("Bacon"), Senior Program Manager for Disabilities Cynthia Chaplin ("Chaplin"), Correction Officer Tanoya Copeland ("Copeland"), Correction Officer Rodney McQueen ("McQueen"), Legal Coordinator Okon Akpan ("Akpan"), Correction Officer Isolina Liriano ("Liriano"), Deputy Warden Elyn Rivera ("Rivera"), Warden Sherma Dunbar ("Dunbar"), Deputy Warden Tiffany Morales ("Morales"), Warden Robin Collins ("Collins"), and Deputy Warden Ronald Miller ("Miller").

State Defendants[2].  (Docs. 114, 110.)  For the reasons that follow, the City Defendants' and State Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART.  Specifically, Plaintiff's first and second claims are dismissed as to the Individual Defendants[3] but survive against the City and the State.  Plaintiff's third, fourth, fifth, sixth, seventh, eighth and tenth claims are dismissed in their entirety.  Plaintiff's ninth claim is dismissed as to the State but survives against Corse and Campbell.

## I.   **Factual Background**[4]

### A.  *Plaintiff Anthony Medina*

Plaintiff Anthony Medina ("Medina" or "Plaintiff") is a legally blind and physically disabled man.  (Doc. 82 ¶ 3.)  At the time Plaintiff filed his complaint, he was incarcerated with the New York State Department of Corrections and Community Service ("DOCCS").  (*Id.*)  On January 8, 2021, Plaintiff was released on parole.  (Doc. 111 at 2 n.3.)  On February 28, 2022, Plaintiff was discharged from parole.[5]  Plaintiff suffers from a degenerative eye disease known as keratoconus which requires him to rely heavily on various devices, equipment, aids, and auxiliary services to see, read, write and perform other activities.  (Doc. 82 ¶ 4.)  Plaintiff also

---

[2] The term "State Defendants" refers to the State of New York (the "State"), Parole Officer Ronnesia Campbell ("Campbell"), retired Senior Parole Officer Barbara Corse-Johnson ("Corse"), Bronx II Bureau Chief ("BC") Diana Estwick ("Estwick"), Interstate BC James Carswell ("Carswell"), and retired Interstate Program Aid Karen Risch ("Risch").

[3] The term "Individual Defendants" refers to any defendant who is not an entity, namely:  Anderson, Bacon, Chaplin, Copeland, McQueen, Akpan, Liriano, Rivera, Dunbar, Morales, Collins, Miller, Campbell, Corse, Estwick, Carswell, and Risch.

[4] The facts contained in this section are based upon the factual allegations set forth in the Second Amended and Supplemental Complaint ("Second Amended Complaint") filed by plaintiff Anthony Medina.  (Doc. 82.)  I assume the allegations the Second Amended Complaint to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[5] DOCCS, Parolee Lookup (last accessed September 21, 2023), available at https://publicapps.doccs.ny.gov/ParoleeLookup/ (search of databased based on DIN Number 99A2999).

suffers from photophobia which makes him highly sensitive to light and amblyopia, an eye

disorder, which gives him a lazy eye.  (*Id* ¶ 5.)  Plaintiff also suffers nerve damage in his arms

and hands.  (*Id.* ¶¶ 6–7.)

### B.  *Lack of Accommodations While on Parole*

On October 18, 2019, Plaintiff was released from the custody of the DOCCS after serving

a 95-day parole violation.  (*Id.* ¶ 32.)  Although Plaintiff's parole conditions prohibited him from

associating with known criminals, he was "forcibly made" to live at the Department of Homeless

Services Bellevue Shelter ("DHS Bellevue"), where Plaintiff asserts most residents "are

criminals and parolees."  (*Id.* ¶¶ 33–34.)  DHS Bellevue was not able to accommodate Plaintiff's

visual disabilities; therefore, Plaintiff relied on strangers for help with basic tasks.  (*Id.* ¶ 35.)

While at DHS Bellevue, Plaintiff was assaulted during an attempted robbery by three men which

resulted in him suffering serious eye injuries and being taken to the hospital.  (*Id.* ¶¶ 36–37.)

Plaintiff reported the incident to DHS Bellevue staff, who told him that the shelter could not

accommodate his disability and "if he had a residence to go to, it was best for him to reside

there."  (*Id*. ¶¶ 42–43.)  After a few days sleeping on the train or at his uncle's home, on

November 1, 2020, an accommodating shelter was found for Plaintiff and he was driven to the

Bowery Street Residence shelter.  (*Id.* ¶ 44.)  Plaintiff informed Campbell of his address change.

(*Id.*)

### C.  *Plaintiff's Prior Lawsuits*

In 2017, Plaintiff received a preliminary injunction in another case against DOCCS

employees, *Medina v. Buther*, No. 15-CV-1955(LAP), 2017 WL 700744 (S.D.N.Y. Feb. 3,

2017).  In September 2019, the *Buther* court ordered that Defendants pay Medina attorneys' fees,

costs, and compensatory damages.  *Buther*, 2019 WL 4370239, at *25 (S.D.N.Y. Sept. 12, 2019).

In November 2019, three federal suits filed by Plaintiff against DOCCS and DOCCS employees were resolved by settlement.  (Doc. 82 ¶ 49.)  As part of the settlement, DOCCS agreed to a monetary award and immediately transferred Plaintiff to serve the remainder of his parole in Illinois (conditional upon Illinois accepting Plaintiff) so that Plaintiff could live with his fiancé, Waleska Marrero ("Marrero").  (*Id.*)

### D.  *Transfer to Illinois*

On December 9, 2019, Illinois approved Plaintiff's interstate transfer request.  (*Id*. ¶ 52.) Plaintiff was told he could be transferred once DOCCS arranged a travel time and sent him to Illinois.  (*Id*. ¶ 54.)  On December 17, 2019, Plaintiff's Parole Officer, Campbell, told Marrero that the interstate transfer process was completed, and she could come pick up Plaintiff "in the next couple of days."  (*Id.* ¶ 60.)  However, Plaintiff claims that Campbell, Corse, Estwick, Risch, and Carswell did not allow Plaintiff to go to Illinois and instead delayed his transfer by stating that they needed to first compile a program packet to send to Illinois.  (*Id*. ¶ 61.) Compiling this packet involved sending Plaintiff to various locations to retrieve and drop off certified copies of documents.  (*Id.* ¶¶ 64–67.)  Plaintiff made several requests for transportation accommodations through text, email, and documentary submissions, but these accommodations were denied at unspecified times, in unspecified manners.  (*Id.* ¶¶ 68, 142, 150–152.)

On December 19, 2019, Plaintiff was hit by a car and taken by ambulance to the hospital. (*Id.* ¶ 97.)  Although Plaintiff was vomiting and unable to walk, he checked himself out of the hospital and was picked up by his uncle.  (*Id.* ¶ 102.)  Plaintiff informed Campbell of the accident during a home visit on December 21, 2019.  (*Id.* ¶¶ 103–104.)  Campbell notified Plaintiff she would be on vacation until January 3, 2020, and she did not know why he had not yet been transferred.  (*Id.* ¶¶ 105–107.)

### E. *Altercation with Jason Colter*

On December 21, 2019, Plaintiff inquired with a shelter staff member about how he could "get" to another shelter. (*Id.* ¶ 109.) During that conversation, another shelter resident, Jason Colter ("Colter") entered the office inebriated, threatened Plaintiff, and left. (*Id.* ¶¶ 110–111.) Later that night, after Colter continued making derogatory comments to Plaintiff, Colter swung at Plaintiff, hitting him in the shoulder. (*Id.* ¶ 113.) Plaintiff reflexively raised his hands, hitting Colter in the face and causing him to be knocked to the floor. (*Id.* ¶ 114.) Plaintiff and Colter were escorted out of the shelter by police, and both declined to press criminal charges against the other. (*Id.* ¶¶ 116–118.)

### F. *Parole Revocation*

On January 6, 2020, when Plaintiff called Risch, the Interstate Program Aide, for an update on his transfer, she "gave all types of excuses" and "not once mentioned the delay was" caused by the reasons he was told previously. (*Id.* ¶ 76.) Plaintiff "bluffed Defendant Risch" by telling her that the Illinois interstate unit told him that New York did not send the proper documentation to them, which Risch denied and directed Plaintiff to contact his parole officer. (*Id.* ¶ 77.) Eventually, Carswell, an Interstate Bureau Chief, joined the call and gave Plaintiff additional excuses as to why his transfer was not complete, which included telling Plaintiff that he was being investigated for assault. (*Id.* ¶¶ 80–83.) Plaintiff then contacted Campbell, who had not heard that Plaintiff was being investigated for assault. (*Id.* ¶¶ 88–89.) On January 7, 2020, New York City Police Department officers asked Plaintiff to accompany them to the police station and, once at the station, arrested Plaintiff for assaulting Colter. (*Id.* ¶ 93.) On January 8, 2020, after Plaintiff reported to Campbell's office and provided a urine sample for a drug test, Campbell handcuffed him and informed him that his parole was revoked. (*Id.* ¶ 95.)

On January 21, 2020, Plaintiff had a preliminary parole revocation hearing.  (*Id.* ¶ 194.) Plaintiff's final parole revocation proceedings began on February 3, 2020, and, after several adjournments, ended on June 3, 2020.  (*Id.* ¶¶ 197–204.)  Plaintiff describes a number of challenges he faced during his parole revocation hearing including that:  he was denied accommodations needed to see, read, write, and effectively communicate; his parole revocation hearing was untimely; he was denied the ability to introduce relevant and exculpatory evidence and witness testimony; his administrative law judge was unfair and not impartial; and his revocation hearing was held over the telephone which meant he could not confront the witnesses against him, assess their demeanor, be properly identified by Colter, or view physical evidence. (*Id.* ¶¶ 156–242.)

## II.    Procedural History

Plaintiff filed his initial complaint on May 14, 2020.  (Doc. 2.)  Plaintiff amended his complaint on June 5, 2020, (Doc. 4), and December 29, 2020, (Doc. 79).  On January 7, 2021, Plaintiff filed the operative complaint, the Second Amended Complaint.  (Doc. 82.)  The Second Amended Complaint alleges ten causes of action:  (1) violations of the Americans with Disabilities Act ("ADA"); (2) violations of Section 504 of the Rehabilitation Act; (3) denial of equal protection for transportation accommodations under 42 U.S.C. § 1983 and the Fourteenth Amendment; (4) denial of equal protection for ineffective communication under 42 U.S.C. § 1983 and the Fourteenth Amendment; (5) denial of equal protection for inadequate investigation under 42 U.S.C. § 1983 and the Fourteenth Amendment; (6) retaliation in violation of under 42 U.S.C. § 1983 and the First and Fourteenth Amendments; (7) conspiracy in violation of 42 U.S.C. §§ 1983 & 1985(2),(3) and Fourteenth Amendment; (8) denial of due process in parole revocation proceedings, in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment; (9)

deliberate indifference for transportation accommodations under 42 U.S.C. § 1983 and the Fourteenth Amendment; and (10) denial of equal protection due to an unconstitutional statute under 42 U.S.C. § 1983 and the Fourteenth Amendment.  (*Id.* ¶¶ 310–381.)  The Second Amended Complaint named the State Defendants, the City Defendants, the DOCCS, DHS Bellevue, and NYC DOC.  (*See id.*)  On February 16, 2021, I entered an order dismissing claims against DOCCS, DHS Bellevue, and NYC DOC.  (Doc. 89; *see also* Doc. 13.)

On July 28, 2021, the State Defendants and City Defendants filed their motions to dismiss the Second Amended Complaint.  (Docs. 110, 114.)  Because Plaintiff requested extensions, suffers from visual impairments, and was injured during a car accident, I granted him four extensions to file his response to the motions to dismiss.  (*See* Docs. 120, 124, 127, 129.)  After having eight months to respond to the motions to dismiss, Plaintiff failed to file any opposition and I deemed the motions unopposed and fully submitted.  (Doc. 131.)[6]

### III.   Legal Standards

#### A.   *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

---

[6] Copies of Defendants' motions and my Orders have been mailed to Plaintiff at the address he provided to the Court on August 3, 2021.  (Doc. 118.)  Since providing this address, no mail has been returned as undeliverable and Plaintiff provided the same address on a letter submitted to the Court on July 18, 2023.  (*See* Doc. 132 at 6.)

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237.  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (citation omitted).  In a discrimination case, "[t]he facts required by *Iqbal* to be alleged in the complaint . . . need only give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

### B.  *Pro Se Litigant*

Even after *Twombly* and *Iqbal*, "'[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  Further, pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'"  *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim for relief.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it."  *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (cleaned up).

In addition, "[a] court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic[]' or 'delusional.'" *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).

### C.  *Unopposed Motion to Dismiss*

"In deciding an unopposed motion to dismiss, a court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency.'" *Haas v. Com. Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (quoting *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)). "Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Id.* (internal quotation marks omitted).

### IV.  <u>Discussion</u>

### A.  *Parole Revocation Claims*

Plaintiff's fourth, fifth, sixth, seventh, and eighth claims are brought pursuant to § 1983 and are related to the revocation of his parole (the "Parole Revocation Claims").  (*See generally* Doc. 82.)  Plaintiff's fourth and fifth claims are that he was denied equal protection under the Fourteenth Amendment because (1) he was declined the ability to effectively communicate during his parole revocation proceedings[7], (*id.* 66–67), and (2) Defendants neglected to conduct a requisite investigation into the alleged acts that resulted in his parole revocation[8], (*id.* 68). Plaintiff's sixth claim for relief is for retaliation in violation of the First and Fourteenth

---

[7] Plaintiff's fourth claim is brought against the City, McQueen, Copeland, Anderson, Chaplin, Bacon, and the State.

[8] Plaintiff's fifth claim is brought against Corse, Campbell, Estwick, Carswell, Risch, and the State.

amendments because Defendants revoked his "parole release outside normal procedures without conducting the requisite investigation" and "with[e]ld[] and preclude[d] exculpatory evidence and witnesses" during his revocation proceeding.[9]  (*Id.* 69.)  Plaintiff's seventh claim is that Defendants "conspired to revoke plaintiff's parole liberty."[10]  (*Id.* 69–70.)  Plaintiff's eighth claim is that he was denied due process in connection with his parole revocation proceedings.[11] (*Id.* 71.)  The State Defendants argue that Plaintiff's claims related to his parole revocation fail as a matter of law under the "favorable termination rule" of *Heck v. Humphrey*, 512 U.S. 477 (1994).  (Doc. 111 at 9.)  I agree.

The favorable termination rule requires me to consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Heck*, 512 U.S. at 487.  "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."  *Id*.  In this Circuit, the favorable termination rule has been found to apply to actions challenging parole revocation.  *See, e.g.*, *Lee v. Donnaruma*, 63 F. App'x 39, 41 (2d Cir. 2003).

Plaintiff does not claim that his parole revocation has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87.  In fact, Plaintiff filed a habeas corpus motion that was dismissed on September 10, 2020, because he failed to appeal his conviction.  *See* Decision on Writ of Habeas Corpus, *People ex rel. Williams on behalf of Medina v. Brann*, Index No. 451578/2020 (N.Y.

---

[9] Plaintiff's sixth claim is brought against Corse, Campbell, Estwick, Carswell, Risch, and the State.

[10] Plaintiff's seventh claim is brought against Corse, Campbell, Estwick, Carswell, Risch, and the State.

[11] Plaintiff's eighth claim is brought against Corse, Campbell, and the State.

Sup. Ct. Sept. 10, 2020).  As a result, Plaintiff does not qualify for any exception to the favorable

termination rule.  *See Jean-Laurent v. Hennessy*, No. 05CV1155JFBLB, 2008 WL 5274322, at

*2 (E.D.N.Y. Dec. 18, 2008) ("[B]ecause plaintiff did not file a direct appeal of his conviction in

state court and did not file a timely habeas petition, he cannot avail himself of any exceptions to

the *Heck* rule with respect to these claims.")

Because no exception applies, I must apply the favorable termination rule and consider

whether resolving the Parole Revocation Claims could imply the invalidity of the underlying

proceeding.  All of the Parole Revocation Claims challenge the circumstances of his parole

revocation proceedings; therefore, for Plaintiff to succeed on such claims would require an

invalidation of the parole revocation decision.  Accordingly, Plaintiff's Parole Revocation

Claims must be dismissed without prejudice.  *See Austin v. Cuomo,* No. 1:20-CV-00893, 2020

WL 7352664, at *6 (W.D.N.Y. Dec. 15, 2020); *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir.

1999) ("Disposition of the case on *Heck* grounds, however, warrants only dismissal without

prejudice, because the suit may be reinstituted should plaintiff's conviction be expunged by

executive order, declared invalid by a state tribunal authorized to make such determination, or

called into question by a federal court's issuance of a writ of habeas corpus." (internal citation

omitted)).

### B.  *ADA and Rehabilitation Act Claims*

Plaintiff's first and second claims are for violations of the ADA and the Rehabilitation

Act.  (Doc. 82 ¶¶ 310–329.)  In support of his ADA claim, Plaintiff alleges that the City and the

State "did not provide [information related to accessible services, activities, and facilities] to

Plaintiff while he was in said Defendants['] care and custody."  (*Id.* ¶ 64.)  Plaintiff also states

that the City, "Bacon, Collins, and E. Rivera improperly removed Plaintiff from the ADA

Housing Unit at NIC in retaliation for his grievances he had filed, and transferred Plaintiff to jail's [sic] that could not accommodate his visual disability." (*Id.*)  Plaintiff makes similar assertions in support of his Rehabilitation Act claim. (*Id.* ¶¶ 322–329.)

### 1. Individual Defendants

City Defendants assert that Plaintiff's ADA and Rehabilitation Act claims should be dismissed against any Individual Defendants because neither statute allows suits for money damages against individuals. (Doc. 115 at 7.)  It is correct that "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).  However, ADA and "Rehabilitation Act suits for prospective injunctive relief may. . .  proceed against individual officers in their official capacity." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal citations omitted).

Plaintiff requests an injunction ordering Defendants to take certain actions to accommodate his disability and expedite his interstate parole transfer. (Doc. 82 at 75.)  The State and City Defendants argue that Plaintiff's claims for injunctive relief are moot. (Doc. 111 at 24; Doc. 115 at 6.)  A claim "becomes moot . . . when it is impossible for the court to grant any effectual relief whatever to a prevailing party." *In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999) (cleaned up).  Because Plaintiff is no longer in either NYC DOC or DOCCS custody, his claims for injunctive relief are moot.[12]  *See Amaker v. Gerbing*, No. 17-CV-03520 (PMH), 2022 WL 463312, at *7 (S.D.N.Y. Feb. 15, 2022); *Dorsey v. Sullivan*, No. 10-CV-00744F, 2013 WL 4776344, at *6 (W.D.N.Y. Sept. 3, 2013).  Because Plaintiff cannot maintain a suit against

---

[12] DOCCS, Parolee Lookup (last accessed September 21, 2023), available at https://publicapps.doccs.ny.gov/ParoleeLookup/ (search of databased based on DIN Number 99A2999).

Individual Defendants for damages in their individual capacity and claims for injunctive relief against them in their official capacities are moot, he cannot plead an ADA or Rehabilitation Act claim against any of the Individual Defendants.  Accordingly, the first and second claims for Relief of the Second Amended Complaint are dismissed against Anderson, Bacon, Chaplin, Copeland, McQueen, Akpan, Liriano, Collins, Miller, E. Rivera, Dunbar, Morales, Campbell, Corse-Johnson, Estwick, and N. Rivera.

### 2.  The State and City

Defendants also argue that Plaintiff fails to state a claim against the State or the City under either the ADA or the Rehabilitation Act.  (Doc. 111 at 22–23; Doc. 115 at 6.)  The elements for these two statutes are similar.  "[T]o establish a violation of Title II of the ADA, [a] plaintiff must show that: 1) he or she is a qualified individual with a disability; 2) he or she is being excluded from participation in, or being denied the benefits of some service, program or activity by reasons of his or her disability; and 3) the entity which provides the service, program or activity is a public entity."  *Atkins v. Cnty of Orange*, 251 F. Supp. 2d 1225, 1231 (S.D.N.Y. 2003) (citation omitted).  "Under § 504 of the Rehabilitation Act, a plaintiff must show that:  1) he or she has a disability for purposes of the Rehabilitation Act; 2) he or she was otherwise qualified for the benefit he or she had been denied; 3) he or she has been denied the benefits solely by reason of his or her disability; and 4) the benefit is part of a program or activity receiving Federal financial assistance."  *Id.* (internal quotation and citation omitted).

"For purposes of determining whether an ADA plaintiff is a qualified individual with a disability, the ADA defines disability to include, inter alia, a physical or mental impairment that substantially limits one or more major life activities."  *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021) (cleaned up).  The Rehabilitation Act defines an "individual with a disability"

by reference to the ADA.  *See* 29 U.S.C. § 705(20)(B).  Plaintiff pleads that he has three eye

disorders (keratoconus, photophobia, and amblyopia) and neuropathy.  (Doc. 82 ¶¶ 4–8.)  It is

not disputed that Plaintiff's keratoconus is a disability because it substantially interferes with his

ability to see, read, and write, which are all expressly defined as major life activities under the

regulations implementing the ADA.  (Doc. 82 ¶ 4; *see also* 28 C.F.R. § 35.108(c)(1)(i) (defining

"major life activities" to including "seeing," "reading," "writing," "sleeping," and "performing

manual tasks").)  However, the City Defendants argue that Plaintiff has not established that he is

a qualified individual with a disability with regard to his photophobia or neuropathy for the

purposes of the ADA and Rehabilitation Act.  (Doc. 115 at 7–8.)

　　　　Plaintiff's photophobia causes him to experience acute eye pain, chronic debilitating

headaches, double vision, vertigo, and nausea.  (Doc. 82 ¶ 5.)  Plaintiff also suffers from

neuropathy, which causes numbness, pain, tingling, muscle spasms, involuntary hand

movements, and difficulty using certain technology.  (*Id.* ¶ 6–8.)  Other courts have found both

photophobia and neuropathy to be disabilities under the ADA.  *See e.g.*, *Wilson v. Bd. of Educ. of

Prince George's Cnty.*, No. 12-CV-2092-AW, 2013 WL 3146935, at *6–7 (D. Md. June 18,

2013) (finding that "left foot neuropathy" was a disability under the ADA because Congress

"liberaliz[ed] the standard used to establish disability under the ADA" when it passed the ADA

Amendments Act in 2008.); *Adams v. California Prison Indus. Auth.*, No. 2:20-CV-1901-JDP-P,

2020 WL 5995020, at *2 n.2  (E.D. Cal. Oct. 9, 2020) (finding that plaintiff adequately pled

"that his light sensitivity categorizes him as disabled"); *but see Burke v. Evans*, 248 F. App'x

206, 208 (2d Cir. 2007) (finding that plaintiff's photophobia was not a disability based on his

testimony that his condition "is entirely corrected by wearing tinted sunglasses").  I find that at

this stage, Plaintiff has sufficiently pled that his photophobia and neuropathy are disabilities

under the ADA and Rehabilitation Act because, interpreting the facts in the light most favorable

to Plaintiff, these conditions substantially limit his ability to engage in major life activities such

as sleep and perform manual tasks.  *See* 28 C.F.R. § 35.108(c)(1)(i).  Accordingly, Plaintiff has

adequately pled that his keratoconus, photophobia, and neuropathy are disabilities pursuant to the

ADA and Rehabilitation Act.[13]

The City Defendants also argue that Plaintiff has not established that they failed to

provide him with reasonable accommodations.  (Doc. 115 at 7–8.)  Reasonable accommodations

are that which provide the disabled individual with "meaningful access to participate or benefit

from services."  *Watley v. Dep't of Child. & Fams.*, 991 F.3d 418, 426 (2d Cir. 2021).  Plaintiff

pleads that he was denied reasonable accommodations while at DHS Bellevue because he was

not permitted to use the elevator, had difficulty navigating the building, and was unable to use

the combination lock he was provided.  (Doc. 82 ¶¶ 36, 41.)  Plaintiff also pleads that he

requested disability accommodations while incarcerated by the NYC DOC, including "auxiliary

devices, equipment, aids and services."  (*Id.* 53, ¶ 243.)[14]  Although the facility did provide

certain accommodations after several weeks, at this stage, there is not a sufficiently developed

factual record to determine whether the accommodations provided were reasonable.  *See Walker

v. City of New York*, 367 F. Supp. 3d 39, 56 (S.D.N.Y. 2019) (ADA and Rehabilitation Act

claims survived summary judgment where "the Court has an underdeveloped record concerning

the reasonable accommodations").  Accordingly, I decline to dismiss the ADA or Rehabilitation

Act claims against the City.

---

[13] Plaintiff does not discuss his amblyopia with regards to his ADA or Rehabilitation Act claims.  Because Plaintiff does not describe any life activities that this condition impacts, I find that it is not a disability under the relevant statutes.  (Doc. 82 ¶ 5.)

[14] Because Plaintiff's Second Amended Complaint repeats the paragraph numbers 236–245, both the page and paragraph numbers are provided here.

The State Defendants argue that Plaintiff does not allege any specific program, service, or activity that he was denied because of his disabilities.  (Doc. 111 at 22–23.)  I disagree.  Plaintiff makes a number of allegations against the DOCCS and Division of Parole ("DOP") and, as explained in my Order entered on July 12, 2020, these entities "are arms of the state of New York."  (Doc. 13 at 3.)  Accordingly, factual accusations against the DOCCS and DOP in the Second Amended Complaint are made against the State.  For example, Plaintiff alleges that the DOCCS denied his requests for non-report status and home visits, which were "accommodations afforded to other parolees with mental and medical conditions and disabilities who are unable to travel on their own." (Doc. 82 ¶¶ 141–142.)  Plaintiff also alleges that he requested and was denied or prevented from having "reasonable transportation accommodations."  (*Id.* ¶¶ 141, 148, 153.)  At this stage, Plaintiff has sufficiently alleged violations of the ADA and Rehabilitation Act against the State.

### C. *Equal Protection Claims*

Plaintiff's third and tenth claims are that he was denied equal protection under the Fourteenth Amendment because (1) he was denied transportation accommodations, (Doc. 82 ¶¶ 330–334); and (2) New York Executive Law § 259-i, sections 7 and 8 afford more rights to hearing disabled and non-English speaking parolees then visually disabled parolees, (*id.* ¶¶ 380–381).  The third claim is directed against Corse, Campbell, and the State, whereas the tenth claim is only asserted against the State.  (*See id.* ¶¶ 330–334.)

A claim for denial of equal protection under the Fourteenth Amendment, requires a plaintiff to show:  (1) adverse treatment compared with other similarly situated individuals; and (2) that the cause of the adverse treatment was an impermissible consideration such as race, religion, intent to inhibit/punish the exercise of constitutional rights, or malicious/bad faith intent

to injure a person. *See Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008).  Several

courts in this District have held that claims asserting discrimination on the basis of disability are

not cognizable under § 1983 because there is no constitutional right to be free from

discrimination on the basis of one's disability.  *See, e.g.*, *Bonds v. Cnty. of Westchester*, No. 19-

CV-1712 (KMK), 2020 WL 4347704, at *8 (S.D.N.Y. July 28, 2020) ("[T]he weight of authority

in the Second Circuit establishes that claims of employment discrimination based on disability

are not cognizable under § 1983.") (collecting cases); *Dotson v. City of Syracuse*, No.

518CV750MADATB, 2019 WL 2009076, at *11 (N.D.N.Y. May 7, 2019) (collecting cases).

Further, "disability . . . [is not a] suspect or quasi-suspect class[] under the Equal

Protection Clause."  *Fierro v. City of New York*, No. 1:20-CV-09966-GHW, 2022 WL 428264, at

*8 (S.D.N.Y. Feb. 10, 2022).  "[W]hen a challenged statute does not implicate suspect or quasi-

suspect classifications or burden fundamental rights, [a court] appl[ies] rational basis review."

*United States v. Amalfi*, 47 F.4th 114, 124 (2d Cir. 2022).  Accordingly, unless there is no

rational relationship between the treatment disparity and some legitimate governmental purpose,

the state action is to be upheld.  *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993).  In light of this,

some courts have allowed such claims to proceed on a "class of one" basis.  *See Crichlow v.*

*Annucci*, No. 921CV0692DNHTWD, 2022 WL 179917, at *23 (N.D.N.Y. Jan. 20, 2022);

*Scruggs v. Meriden Board of Education*, 2006 WL 2715388, *3 (D. Conn. 2006) ("Because

disabled students are not a protected class and there is no fundamental right to education,

Plaintiff must make a 'class of one' equal protection claim.").  "[T]o succeed on a class-of-one

claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the

plaintiff to differ from those of a comparator to a degree that would justify the differential

treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances

and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59–60 (2d Cir. 2010).

Plaintiff's equal protection claims for the alleged lack of transportation accommodations fail, even under a "class of one" theory. Plaintiff does not identify any similarly situated individuals that were treated differently from him, much less any with the "extremely high degree of similarity" required for a "class of one" equal protection claim. *Ruston*, 610 F.3d at 59 (internal quotation marks omitted).

New York Executive Law § 259-i(7)-(8) provides that deaf, foreign-born, and non-English-speaking individuals be provided interpreters when appearing before the New York Board of Parole. "[W]hen a challenged statute does not implicate suspect or quasi-suspect classifications or burden fundamental rights, we apply rational basis review." *Amalfi*, 47 F.4th at 124. New York Executive Law § 259-i is such a statute. Under a rational basis review, the "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). "Statutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution." *Ferguson v. Skrupa*, 372 U.S. 726, 732 (1963) (citing *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488–89 (1955)). New York Executive Law § 259-i is rationally related to a legitimate state interest of ensuring that individuals appearing before the parole board understand their proceedings. Accordingly, Plaintiff's third and tenth claims are dismissed.

### D. *Deliberate Indifference*

Plaintiff's ninth claim for relief is for deliberate indifference under the Fourteenth

Amendment pursuant to § 1983 related to his conditions of confinement and requests for transportation accommodations due to his disability.  (Doc. 82 at 4; *id.* ¶¶ 373–29.)  Plaintiff brings this claim against the State, Corse, and Campbell.  (*Id.*)[15]

### 1.  The State

"A § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement."  *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004).  Thus, courts consistently decline to permit § 1983 actions based on violations of the ADA or Rehabilitation Act. *See, e.g.*, *Parent v. Pittsford Cent. Sch. Dist.*, 237 F. Supp. 3d 82, 92 (W.D.N.Y. 2017) ("Plaintiffs' § 1983 claim is based on violations of Section 504 and the ADA, with only an additional allegation that Defendants acted with deliberate indifference.  Consequently, the § 1983 claim cannot be maintained."); *Grassel v. Dep't of Educ. of City of N.Y.*, No. 12 CV 1016 PKC, 2015 WL 5657343, at *12 (E.D.N.Y. Sept. 24, 2015) ("To the extent the Complaint can be construed to assert a deprivation of civil rights under Section 1983, the Court finds such a claim to claim to be duplicative of Grassel's ADA discrimination claims, therefore requiring their dismissal.") (collecting cases).  Plaintiff asserts that the State's conduct "violated the First and Fourteenth Amendments . . . as well as the Title II of the [ADA] and Section 504 of the Rehabilitation Act."  (Doc. 82 at 4.)  Plaintiff's claim for deliberate indifference is duplicative of his ADA and Rehabilitation Act claims and accordingly may not survive.  The State's motion to dismiss Plaintiff's ninth claim is GRANTED.

### 2.  Corse and Campbell

As to Corse and Campbell, Plaintiff pleads that they "were deliberately indifferent by

---

[15] Consistent with my Order at Doc. 13, I interpret Plaintiff's allegations made against DOCCS as being made against the State.

knowingly disregarding the hazardous risks to Plaintiff's safety and well-being, by refusing to place him on 'non-report status' after Plaintiff provided Defendants with a letter from an eye doctor stating it was unsafe for Plaintiff to travel on his own." (Doc. 82 ¶ 379.) "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebado Cnty. Dept. of Social. Servs.*, 489 U.S. 189, 196 (1989). Exceptions to this rule apply when the individual is subject to a state created danger or if the state had a special relationship with the individual. *Matican v. City of N.Y.*, 524 F.3d 151, 155 (2d Cir. 2008). However, even if an exception applies, the individual must show that the challenged behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). To state a Fourteenth Amendment claim against state officials, Plaintiff must plead that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the . . . detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Taylor v. City of New York*, 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)).

As a parolee, Plaintiff had a "special relationship" with Corse and Campbell. *See Jacobs v. Ramirez,* 400 F.3d 105, 106 (2d Cir. 2005) ("A parolee, although not in the state's physical custody, is nonetheless in its legal custody, and his or her freedom of movement, while not as restricted as that of an incarcerated prisoner, is nonetheless somewhat curtailed"); *Ciccone v. Ryan*, No. 14-CV-1325 NSR, 2015 WL 4739981, at *5 (S.D.N.Y. Aug. 7, 2015) ("[Plaintiff] and [parole officer] clearly had the kind of 'special relationship' which could subject [parole officer]

to liability.")  However, "[b]ecause the limitations imposed by the state are minimal, so too are the duties it assumes."  *Jacobs*, 400 F.3d at 107.  Here, the limitations imposed were that Plaintiff had to report to "medical and other related appointments throughout Manhattan and the Bronx" and had scheduled days on which he had to report to the parole office in the Bronx. (Doc. 82 ¶¶ 140–141.)

At this stage, I must accept Plaintiff's assertions as true, and interpret these assertions "to raise the strongest arguments that they suggest."  *Brownell*, 446 F.3d at 310 (internal quotation marks omitted).  Plaintiff has sufficiently pleaded a deliberate indifference claim against Corse and Campbell.  Plaintiff states that he "provided Defendants with a letter from an eye doctor stating it was unsafe for [him] to travel on his own."  (Doc. 82 ¶ 329.)  Plaintiff asserts that "'non-report status' and 'home visits' are accommodations afforded to other parolees with mental and medical conditions and disabilities who are unable to travel on their own."  (*Id.* ¶ 142.)  Despite this, Corse and Campbell "refused to process," (*id.* ¶ 375), and "denied Plaintiff's requests for a transportation accommodation," (*id.* ¶ 377).  The failure to receive these accommodations resulted in him being hit by vehicles on three separate occasions.  (*Id.* ¶ 377.) Plaintiff also pleads that he was told that "parole does not have a reasonable accommodation process and people who need accommodations from parole find themselves back in prison."  (*Id.* ¶ 151.)  When Plaintiff "showed Defendant Corse DOCCS' Directive 2612, which governs *inter alia*, the process by which DOCCS parole officers are to accommodate disabled parolees," Corse "threatened" him.  (*Id.* ¶ 152.)  Accepting Plaintiff's allegations as true, Plaintiff has sufficiently pled that Corse and Campbell recklessly refused to mitigate an excessive, known risk to Plaintiff and when confronted with policy that would support Plaintiff's accommodations, threatened Plaintiff.

The State Defendants assert that Corse and Campbell are entitled to qualified immunity. Qualified immunity shields a "government official[ ] from liability for civil damages insofar as [his or her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "While qualified immunity may be successfully asserted on a motion to dismiss the complaint, the defense faces a formidable hurdle at the pleading stage." *Horn v. Stephenson*, 11 F.4th 163, 169–70 (2d Cir. 2021) (cleaned up). "At this stage, the court draws all reasonable inferences in favor of the plaintiff, both from the facts alleged in the complaint that would support the plaintiff's claim and those that would defeat the qualified immunity defense." *Quint v. Martin*, No. 3:21-CV-1695 (KAD), 2023 WL 5289449, at *4 (D. Conn. Aug. 17, 2023). Plaintiff asserts that although other disabled parolees were given accommodations, when he requested similar accommodations, he was threatened and ultimately was hit by a car on three separate occasions. (Doc. 82 ¶¶ 142, 152, 377.) Accepting Plaintiff's factual allegations as true, I do not find that Corse and Campbell are entitled to qualified immunity.

## V.   <u>Conclusion</u>

For the reasons stated above, Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART. Plaintiff's first and second claims are dismissed with prejudice as to the Individual Defendants but survive against the City and the State. Plaintiff's third, fourth, fifth, sixth, seventh, eighth and tenth claims are dismissed without prejudice against all defendants. Plaintiff's ninth claim is dismissed without prejudice as to the State but survives against Corse and Campbell. Defendants are ordered to file their answers to the Second Amended Complaint within two weeks of the entry of this Opinion & Order.

The Clerk of the Court is respectfully directed to terminate the pending motions at Docs. 110 and 114.

SO ORDERED.

Dated: September 26, 2023
        New York, New York

Vernon S. Broderick
United States District Judge